| | |
|---|---|
| **PAMELA LOMBREGLIA and VINCENT LIMBREGLIA, her husband,** | : UNITED STATES DISTRICT COURT<br>: DISTRICT OF NEW JERSEY |
| Plaintiffs, | : |
| | : Civil Action No. 20-0332 (FLW) |
| v. | : |
| | : **OPINION and ORDER** |
| **SUNBEAM PRODUCTS, INC., et al.,** | : |
| Defendants. | : |

This matter comes before the Court on a Motion by Plaintiffs Pamela Lombreglia and Vincent Lombreglia for leave to amend their Complaint to include a claim for punitive damages [ECF No. 17]. Defendants Sunbeam Products, Inc. ("Sunbeam") and Walgreen's Co. ("Walgreen's") (collectively, "Defendants") filed a Brief in Opposition [ECF No. 20]. Plaintiffs filed a Reply [ECF No. 22] as well as a Supplemental Reply [ECF No. 25] to which Defendants filed a Sur-Reply [ECF No. 26].

This action was removed to this Court from the Superior Court of New Jersey by Defendants on January 9, 2020. ECF No. 1. The original Complaint was filed on November 12, 2019 as a products liability action in which Plaintiffs allege that Ms. Pamela Lombreglia suffered severe burn injuries caused by a defectively designed and manufactured heating pad. *Id.* Defendants answered the Complaint on January 14, 2020. ECF No. 5.

On February 25, 2020, the Court entered a Pretrial Scheduling Order which required, among other things, that any motion to amend the pleadings or to join new parties, whether by amended or third-party complaint, be filed by June 30, 2020. ECF No. 6.

On September 15, 2020, Plaintiffs filed their Motion for leave to file a First Amended Complaint. ECF No. 17. Specifically, Plaintiffs sought leave to add a claim for punitive damages against Defendants. *Id*. On October 6, 2020, following a status/scheduling conference with counsel, the Court entered a second Scheduling Order which provided that any motion to amend the pleadings or to join new parties must be filed by January 8, 2021. ECF No. 21.

The Court conducted oral argument on December 15, 2020. Having considered the papers submitted as well as the argument of counsel, and for the reasons stated on the record as well as those set forth in this Opinion and Order, Plaintiffs' motion was GRANTED.

### I. **Plaintiffs' Arguments.**

Plaintiffs sought leave to amend the Complaint to include a count for punitive damages alleging that Sunbeam's willful disregard of the threat its heating pads—which allegedly reach "extremely dangerous temperatures"—could and likely would cause severe and permanent injuries to consumers such as Ms. Lombreglia. Decl. of Michael a Galpern ("ECF No. 17-1") at ¶ 13. Dr. Jeremiah Redstone, Ms. Lombreglia's plastic surgeon, told Mr. Galpern he has treated at least two

other patients who suffered third degree burns from heating pads—both patients also having limited sensation as a result of being breast cancer survivors like Ms. Lombreglia. *Id.* at ¶ 8. Further, Plaintiffs' counsel states that Arthur Bronstein, who performed testing on the subject heating pad, determined the subject heating pad reached a temperature of 160 degrees Fahrenheit, which can cause third degree burns within seconds of direct contact with human skin. *Id.* at ¶ 10. Plaintiffs assert that Sunbeam knew or should have known the heating pad could cause significant injuries in customers with limited sensation—thus, making Sunbeam's conduct egregious as they willfully disregarded the threat to consumers like Ms. Lombreglia. *Id.* at ¶ 11. For these reasons, Plaintiffs desire to include a Count for punitive damages pursuant to N.J.S.A 2A:15-5.12. *See* N.J.S.A. 2A:15-5.12 (Punitive damages may be awarded if the harm suffered was "the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.").

Plaintiffs contend they only became aware that Sunbeam knew or should have known of the danger its heating pads pose after their attorney's conversations with Dr. Redstone and Arthur Bronstein on September 10, 2020. *Id.* at ¶ 16. Additionally, because discovery had been stayed in the case in anticipation of a settlement conference with the Court, "plaintiffs do not have discovery from the defendants as to how many other recorded or reported burns there have been, but based on Dr. Redstone's statement, Defendants had such sufficient knowledge to warrant a claim for punitive damages." *Id.* at ¶ 14. Plaintiffs argue that because they just recently learned of the bases to include a Count for punitive damages, it is in the interest of justice to allow Plaintiffs to amend the Complaint to include this claim. *Id.* at ¶ 18.

   a. *Undue Delay.*

Plaintiffs argue that the Court extended the deadline for motions to amend the pleadings to January 8, 2021, thus making their Motion timely. ECF No. 22 at 1–2. Plaintiffs assert that on September 10, 2020, their attorney spoke to Dr. Redstone and Arthur Bronstein in anticipation of the settlement conference on September 17, 2020. *Id.* at 3. Plaintiffs maintain that as a result of those discussions they learned for the first time that the subject heating pad could reach a temperature of 160 degrees Fahrenheit and within five days of learning this information, Plaintiffs filed their Motion. *Id.* Plaintiffs argue the Motion was not only timely but made promptly upon obtaining the information that would support a claim for punitive damages. *Id.* Plaintiffs point out that although Defendants argue their Motion was not timely, there are no allegations of bad faith, dilatory motives, undue or unexplained delay, or repeated failures to cure a deficiency by amendments preciously allowed. *Id.* at 4.

   b. *Prejudice.*

Plaintiffs argue Defendants will not suffer any undue prejudice if this Motion is granted as this matter is in the earliest stages of discovery. *Id.* at 7. Plaintiffs allege that the parties are still exchanging written discovery and no depositions have been conducted. *Id*. Although both parties have engaged in testing, Plaintiffs argue it is unlikely that new tests on the pad will be required to determine whether Defendants had or should have had knowledge of the risks to Ms. Lombreglia

and whether Defendants acted with a willful and wanton disregard of those risks. *Id.* Additionally, Plaintiffs assert that the testing on the subject heating pad was non-destructive, so if more testing is needed it may be done. *Id.*

      c. *Futility.*

Plaintiffs contend that they allege sufficient facts to support a claim for punitive damages. *Id.* at 8; *see* N.J.S.A. 2A:15-5.12. Plaintiffs assert it is "uncontested that Plaintiff Pamela Lombreglia's injuries were caused by Defendant's subject heating pad." *Id*. In asserting their punitive damages claim, Plaintiffs allege that the subject heating pad reached temperatures that could cause severe burns within seconds of direct contact with human skin. *Id*. Plaintiffs further allege that the subject heating pad was designed in such a way as to allow the portions of the pad that reach extremely and unreasonably hot temperatures to make direct contact with the user's skin. *Id*. Additionally, Plaintiffs allege Defendants redesigned the subject heating pad cover at some time after the heating pad at issue was sold to Ms. Lombreglia making it less likely that the unreasonably and dangerously hot sections of the heating pad would come into direct contact with human skin. *Id.* Last, Plaintiffs' allege that Defendants knew or should have known that it was foreseeable that, when using the heating pad, the portions of the heating pad that reach extreme temperatures would present an unreasonably dangerous risk to women who had undergone mastectomies, who had limited sensation on certain areas of their skin. *Id*. at 9.

Plaintiffs argue that Defendants' reliance on the Underwriters Laboratories standard ("UL 130") to support the proposition that the subject hearing pad did not reach unreasonable temperatures because it was within the temperature limits prescribed by the UL 130 is misplaced. *Id.* at 9. Plaintiffs argue although the "UL 130 standard contemplates the maximum allowable temperatures to be reached by the heating pad, it does not contemplate the maximum allowable 'contact temperature'; i.e. the maximum allowable temperature of sections that may be permitted to come into contact with human skin." *Id*. at 10. Plaintiffs contend that this "contact temperature" was unreasonably and dangerously hot in the present case, and it was foreseeable that the portions of the pad that could become extremely hot would come into contact with Ms. Lombreglia's skin. *See Id*. ("Further, it was foreseeable to Defendants that women who had undergone mastectomies, such as Ms. Lombreglia, were at a heightened risk for skin burns as they had limited sensation on areas of their skin.").

Plaintiffs contend that compliance with the UL 130 standard alone is not relevant to the issue of whether Defendants knew or should have known that portions of the subject heating pad that could come into contact with a user's skin can reach temperatures that could cause severe burn injuries. *Id*. Plaintiffs argue the UL standard should not be considered when determining whether Defendants acted with a willful and wanton disregard of Ms. Lombreglia's safety. *See id*. at 11 Simply, Plaintiffs assert Defendants knew or should have known that the temperature of the portions of the pad that could come into contact with human skin were sufficient to cause severe burns within seconds of contact. *Id*. For these reasons, Plaintiffs argue they have asserted sufficient facts to support their claim that Defendants acted with a willful and wanton disregard for Ms. Lombreglia's safety, as it was foreseeable that someone in Ms. Lombreglia's position would suffer severe injuries from use of the heating pad. *Id*.

## II.  **Defendants' Arguments.**

Initially, Defendants argue Plaintiffs' Motion for leave to amend is "untimely" and without "good cause", supported only by an improper Declaration of Counsel. ECF No. 20 at 1. Defendants maintain the facts Plaintiffs rely on are not new and do not support the allegation that Defendants willfully and wantonly disregarded Ms. Lombreglia's safety. *Id*. Additionally, Defendants argue that the heating pad was within industry standards pursuant to the UL 130. *Id*. Finally, Defendants assert that a claim for punitive damages based on a heating pad that Plaintiffs' expert tested and found to operate within the UL limits would be "futile". *Id*.

### a.  *Undue Delay.*

Defendants argue the Plaintiffs' motion is untimely because it was not filed before June 30, 2020 and Plaintiffs offer no reasonable explanation why the motion was not filed within that deadline. *Id*. at 2. Further, Defendants assert that Mr. Galpern's Declaration is based upon hearsay statements made to him by Dr. Redstone and Mr. Bronstein. *Id*.

Defendants also argue that Plaintiffs' allegations are not new, and this claim could have been asserted before June 30, 2020. *Id*. at 2. Defendants believe this is demonstrated by Plaintiffs' counsel's certification of the original Complaint wherein it is alleged that Defendants defectively designed, manufactured, assembled, packaged and sold the subject heating pad "causing the product to be in a dangerous and unsafe condition." *Id.*; *see* Pl. Comp. [ECF No. 1] ¶ 6. Defendants assert that according to Plaintiffs' counsel, Mr. Bronstein inspected the product and articulated his liability theories well before June 30, 2020. *See* Dec. of Elizabeth Chang (ECF No. 20-1) ¶ 2.

Further, Defendants state Plaintiffs' interrogatories, dated June 18, 2020, alleged design and manufacturing defects caused the heating pad to become "extremely and unreasonably hot." *See id*. (asserting that this shows Plaintiffs' allegations were known and could have been asserted before June 30, 2020). Defendants further argue that Dr. Redstone's statements are legally irrelevant and do not establish good cause. ECF No. 20 at 4. Dr. Redstone purportedly told Plaintiffs' counsel he knew of two other individuals who suffered burns from heating pads. *See* Galpern Decl. ¶ 8. Defendants argue the Declaration does not state when those injuries occurred, when Dr. Redstone learned of them, and whether this information was available prior to June 30, 2020. ECF No. 20 at 4.

Additionally, Defendants argue "good cause" is absent from the Declaration and Dr. Redstone provides no sworn statement claiming this information was not available prior to June 30, 2020. *Id*. Defendants also argue the Declaration fails to allege that these other injuries involved heating pads sold or designed by Defendants and there is no allegation Defendants knew of the other injuries. *Id*. Thus, Defendants argue Plaintiffs have not shown how Dr. Redstone's knowledge of other injuries from heating pads supports Plaintiffs' contention that Defendants "knew or should have known" their heating pads can cause injuries. *Id.*

### b.  *Prejudice.*

Defendants argue they will suffer undue prejudice if Plaintiffs' pleading is allowed. ECF No. 20 at 5. Specifically, Plaintiffs' amendment will burden Defendants with additional discovery,

costs and preparation related to the defense of a claim for punitive damages. *Id*. at 6. "Defendants' expert has already inspected the product without the benefit of Plaintiffs' claim for punitive damages." *Id*. Further, Plaintiffs must prove by clear and convincing evidence that Defendants willfully and wantonly created risks to heating pad users. *Id*. Wanton and willful disregard is "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." See N.J.S.A. 2A:15-5.10. Defendants contend such proofs will require extensive and expensive discovery related to Defendants' intent and conduct related to designing the subject heating pad. *Id*.

      c.  *Futility.*

Defendants argue that Plaintiffs' proposed amendment fails to state a plausible claim for punitive damages. *Id*. at 9. The proposed First Amended Complaint alleges that Sunbeam knew or should have known that their heating pads can reach "extreme temperatures" and Sunbeam knew or should have known that severe burns can occur to individuals who have "limited sensation on areas of their body." (Pl. Amnd. Cpt. ¶ 20-21). Defendants assert Plaintiffs provide no factual support for these allegations in the proposed pleading. ECF No. 20 at 9.

Defendants further rely on the UL 130 standards to show that Plaintiffs' claim for punitive damages is futile. *Id*. at 10. Defendants state the UL 130 test report establishes Plaintiffs' allegations of "extreme temperatures" are incorrect, the pad is within industry standards, and according to Mr. Galpern's Declaration, Mr. Bronstein agrees. *Id*. Thus, Defendants argue, Plaintiffs' allegations are not evidence of willful and wanton misconduct, but of typical, appropriate conduct within the heating pad industry. *Id.*

## III.   **Legal Standards.**

A party may amend its pleading once as a matter of right within either (1) twenty-one days of serving it; or (2) where the pleading is one to which a responsive pleading is required, the earlier of twenty-one days following service of the responsive pleading or a motion to dismiss. Fed. R. Civ. P. 15(a)(1). Once those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc*., 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, courts consider the following factors: "(1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment." *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Unless the balancing of these factors weighs in favor of denying the amendment, leave should be freely given. *See Foman* 371 U.S. at 182.

Delay alone is insufficient grounds to deny an amendment. *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission,* 573 F.2d 820, 823 (3d Cir.2001). However,

"at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould,* 739 F.2d 858, 868 (3d Cir.1984). A court may deny a motion to amend if the moving party cannot satisfactorily explain its delay. *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990) (citing *Leased Optical Dept. v. Opti–Center, Inc.,* 120 F.R.D. 476, 478 (D.N.J.1988)).

Prejudice "is the touchstone for the denial of an amendment," and a finding of unfair or substantial prejudice is sufficient ground for denial. *Cornell and Co., Inc.,* 573 F.2d at 823; *Lorenz v. CSX Corporation,* 1 F.3d 1406, 1414 (3d Cir.1993). In evaluating the extent of any alleged prejudice, the Court looks to the hardship on the non-moving party if the amendment were granted. *Cureton v. NCAA,* 252 F.3d 267, 273 (3d Cir.2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." *Id.* at 273.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage,* 133 F.R.D. at 468 (internal quotation marks and citations omitted). The Court uses "the same standard of legal sufficiency" as a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (stating an amendment would be futile if the complaint, as amended, advances a claim or defense that "would fail to state a claim upon which relief could be granted."); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). In accordance with this standard, the Court must generally accept as true the factual allegations in the complaint, and construe "all reasonable inferences" in the light most favorable to the plaintiff. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" fails to suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Rather, for a complaint to survive dismissal pursuant to this standard, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**IV.**   **Analysis.**

Plaintiffs cannot timely file an Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a). Rule 15(a) limits amendments "as of right" to 21 days after the service of either a responsive pleading or a Rule 12 motion, whichever is earlier. Defendants filed an Answer to the Complaint [ECF No. 5] on January 14, 2020. Plaintiffs filed this Motion [ECF no. 17] on September 15, 2020, so it is clear Plaintiffs require either Defendants' consent or this Court's leave to amend their Complaint. Defendants having opposed the Motion, Plaintiffs can only amend with this Court's leave.

   a. Undue Delay/Good Cause

The Court finds Plaintiffs' motion was not unduly delayed and that good cause has been shown for their filing the Motion after the initial June 30, 2020 deadline. With respect to undue

delay, the Third Circuit has stated:

> [t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. The question of undue delay, … requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

*Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (internal citations omitted).

In particular, "[t]he 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). Although "simple delay cannot justify denying leave to amend by itself, delay that is 'undue'--a delay that is protracted and unjustified--can place a burden on the court or counterparty or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." *Id.*

After a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend. *See E. Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 340 (3d Cir.2000) (affirming district court's denial of motion for leave to amend because no showing of good cause to modify scheduling order was made). "Good cause" exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension. Fed. R. Civ. P. 16(b)(4) Advisory Committee's Notes (1983 amendments). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.,* C.A. No. 06–540–GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). Typically, when analyzing the moving party's diligence, courts consider whether the movant "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith v. Honeywell Int'l, Inc.,* No. 10–CV–03345 (ES/JAD), 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014) (citations omitted); *see also Stallings ex rel. Estate of Stallings v. IBM Corp.,* No. 08–3121 (RBK/JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,* No. 10–1405 (CCC/JAD), 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed.").

Defendants argue that Plaintiffs' motion is untimely because it was filed after the original June 30, 2020 deadline. ECF No. 20 at 2. Plaintiffs counter that this Court reset the deadline to January 8, 2021. ECF 16 at 2. However, because the new deadline was set after the Plaintiffs' motion was filed, the Court finds that Plaintiffs must show good cause for their delay.

In this regard, Plaintiffs contend the basis for their punitive damage claims was not discovered until September 10, 2020 and that upon discovering that information they promptly

filed the Motion. *Id.* Defendants contend that Plaintiffs possessed the information on which the proposed amendment is based prior to June 30, 2020. However, these contentions are based on he allegations in the original Complaint and Plaintiffs' answers to interrogatories which simply allege that the subject heating pad became extremely and unreasonably hot. Defendants have not shown that Plaintiffs had the information they claim to have received on September 10, 2020—the basis of their claim for punitive damages—prior to June 30, 2020.

For these reasons, the Court finds Plaintiffs' motion was not unduly delayed and that good cause had been shown for filing the Motion after the June 30, 2020 deadline.

      b. <u>Prejudice</u>

The Court finds Defendants have not shown any undue prejudice that will result if the Court grants Plaintiffs' Motion. In addressing the issue of prejudice, the Court must "focus on the hardship to the defendants if the amendment were permitted." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001). The non-movant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered ... had the amendments been timely." *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.,* 663 F.2d 419, 426 (3d Cir.1981)). In considering whether prejudice exists, "[courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

Here, Defendants argue amendment will unduly prejudice Defendants with additional discovery, costs and preparation related to the defense of a claim for punitive damages. This assertion does not support a finding that permitting the amendment will create an "unfair burden" on Defendants. *Cureton*, 252 F.3d at 273. Defendants have not shown that there is anything fundamentally unfair or "undue" about being required to defend this claim should it proceed. *See Robert v. Autopart Int'l,* 2016 WL 492762, at *3 (D.N.J. Feb. 8, 2016).

Plaintiffs filed their Motion while the parties are still engaged in written discovery, no dispositive motions have been made and much fact discovery and many depositions have yet to take place. For theses reasons, the Court finds that the Defendants have not shown that permitting Plaintiffs' First Amended Complaint will cause undue prejudice.

      c. <u>Futility</u>

The Court finds Plaintiffs' proposed pleading sufficiently alleges enough facts to state a claim that is plausible on its face. Plaintiffs' proposed First Amended Complaint alleges, among other things, "Defendant Sunbeam acted with a conscious and willful disregard to the risk of injury to Plaintiff Pamela Lombreglia." ECF No. 17-4 (Exhibit A) ¶ 22. The proposed pleading specifically "demand[s] punitive damages against Defendant Sunbeam pursuant to N.J.S.A. 2A:15-5.12." *Id*. ¶ 23. New Jersey's Punitive Damages Act requires a plaintiff to "specifically pray[ ]" for an award of punitive damages and provides that punitive damages may only be awarded if the plaintiff ultimately proves, by clear and convincing evidence, that the defendant acted with "actual malice" or with "a wanton and willful disregard of persons" foreseeably harmed

by the defendant's acts or omissions. N.J.S.A. 2A:15-5.12(a). Wanton or willful conduct similarly requires "the 'conscious and deliberate disregard of the interests of others.'" *Skelcy v. UnitedHealth Grp., Inc.*, No. 12-1014, 2012 WL 6087492, at *6 (D.N.J. Dec. 6, 2012).

Here, the proposed pleading alleges Ms. Lombreglia suffered severe and permanent injuries as a result of her exposure to the heating pad. ECF No. 17-4 (Exhibit A) ¶ 5. The proposed pleading also alleges the injuries were caused by the negligence and gross negligence of the Defendants. *Id.* at ¶ 11 The proposed pleading also alleges that Sunbeam knew or should have known that its subject heating pads reached extreme temperatures sufficient to cause sever burn injuries within a short duration of contact to human skin. *Id.* at ¶ 22. The proposed pleading also alleges Sunbeam acted with a conscious and willful disregard to the risk of injury to Ms. Lombreglia. *Id.* at ¶ 22. Finally, the proposed pleading alleges Defendants defectively designed, manufactured, assembled, packed, repaired, refurbished, reconditioned, marketed, sold or otherwise placed in the stream of commerce, the subject heading pad causing the product to be in a dangerous and unsafe condition. *Id.* at ¶ 6. Thus, while the Court need not address the ultimate viability of Plaintiffs' claim for punitive damages at this time, the Court finds the proposed pleading sets forth sufficient allegations to support the amendment. *See Duell v. Kawasaki Motors Corp., U.S.A.*, No. CV 12-7273 (JBS/AMD), 2014 WL 12908947, at *2 (D.N.J. July 18, 2014) (granting a motion to amend to add a count for punitive damages where plaintiffs sufficiently pled a claim for punitive damages). *See also Jones v. Francis*, No. 13-4562, 2013 WL 5603848, at *3 (D.N.J. Oct. 11, 2013) (finding that the Court "should not decide the availability or unavailability of punitive damages as a matter of law on a motion to dismiss" because "[r]equests for this type of relief, while boilerplate, embody a central tenet of notice pleading under the federal rules, even post *Twombly* and *Iqbal*" and "subsequent discovery may reveal facts that bring to light previously unknown but nevertheless appropriate redress").

### V. Conclusion.

For the foregoing reasons as well as those set forth on the record on December 15, 2020, Plaintiffs' motion for leave to file the proposed First Amended Complaint is GRANTED; it is further

ORDERED that this Order **terminates** ECF No. 17.

*s/ Douglas E. Arpert*

Hon. Douglas E. Arpert

U.S. Magistrate Judge (DNJ)